IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

v.

JOSHUA SHERWOOD,   Case No.: 24-cr-00103-wmc

Defendant.

SENTENCING MEMO

I. Introduction

Shortly after being released from prison for possessing child pornography, the defendant, Joshua Sherwood, escalated his predatory behavior and began reaching out to minor girls across the country – manipulating them into producing sexually explicit images for him. Prior to being discovered by a parent of one of his victims, there was no indication that the defendant had any intention of stopping his behavior. The guidelines for his offense are 360 months to life in prison, capped by a statutory maximum of 40 years. For the reasons below, the government believes a sentence of 30 years, followed by a lengthy term of supervised release, is sufficient but not greater than necessary to reflect the gravity of the defendant's crimes and to meet the other sentencing factors under 18 U.S.C. § 3553(a).

II. Facts

   A. Offense Conduct

The defendant reached out to Minor A, then 15 years old, on Snapchat in late 2022. She told him her age, hoping it would scare him away. It didn't. Instead, he

began paying for pictures of Minor A's feet.  He then began asking her for clothed "mirror" pictures, pictures of her in her underwear, and finally full nudes. (R. 15, ¶ 26).  At some point, Minor A realized the defendant was sexually exploiting her by recording her during video calls.  (Id.).  The defendant showed Minor A the photos of her that he had saved and threatened to send them to "everyone" including her parents if she ever stopped talking to him.  (Id.).  He also threated to "ruin her life" and to commit suicide.  (Id.).  Minor A eventually had to change her name on Snapchat and make all her social media accounts private in order to stop the defendant from contacting her.  (Id.).

After the defendant was arrested, the defendant continued to reach out to Minor A from jail.  After she blocked the jail number, the defendant's mother began reaching out to Minor A.  Minor A blocked that number too.  (Id., ¶ 30).

When made aware of the allegations in this case, the defendant's probation agent seized the defendant's phone.  Law enforcement analyzed it and found hundreds of photos depicting high-school age girls, including Minor A, engaged in different sex acts.  Included with the images were comments such as, "I'm so sorry please don't text anything I was extremely busy and caught up cleaning that I don't even have time for myself I sent what I can and my phones being taken away until tomorrow please don't text I'm sorry"  and a video in which Minor A says she is wearing underwear the defendant bought for her.  (R. 15, ¶¶ 33(c), 34(k)).

Snapchat messages in the defendant's phone indicated he shared Minor A's images with at least one other person.  (R. 15, ¶ 35).  He also shared images of his other

2

victims with Minor A.  (Id., ¶ 27).

    B.    Additional Victims[1]

        1.    Minor Victim 1 (MV1)

In August 2022, the defendant began following MV1, then 15 years old, on various social media applications.  (R. 15, ¶ 14).  Between August and December 2022, he sent MV1 a Lululemon shirt, several hundred dollars, and presents from her Amazon Wishlist in exchange for "mirror pictures."[2]  (Id., ¶ ¶ 11, 13-15).  According to records from Amazon, he sent MV1 16 orders between November 10 and November 24, 2022[3].  (Id., ¶ 17).  MV1 told the defendant she was 15.  The defendant lied about his age, telling MV1 he was in his 20s, and told her that he was talking to other girls and doing "the same thing."  (Id., ¶ 16).

        2.    Minor Victim 2 (MV2)

During the summer of 2002, the defendant contacted MV2, then 15 years old, on TikTok.  (R. 15, ¶ 18).  The two then began conversing on Snapchat.  MV2 told the defendant that what they were doing was wrong because she was 15 and he was older.  (Id.).  The defendant ultimately convinced MV2 to send sexually explicit videos of herself to him, telling her what kinds of images he wanted.  (Id.).  He also sent nude

---

[1] In his plea agreement, (R. 6), the defendant admitted violating Title 18, United States Code, Section 2251 against Minors 1-7.  Some of the girls did not want to be interviewed about their victimization.

[2] MV1's father intercepted one of the packages and reported it to police, kicking off this investigation.

[3] Law enforcement used these Amazon records to identify other victims in this case, including the victim in the charged count.

images of himself to her. He sent her items from Lululemon, sex toys, lingerie, and money. (Id.). Items the defendant sent from Amazon included a G Spot Rabbit Vibrator with Heating Function; Rose Sex Toys for Clitoris G-spot Stimulation; a Waterproof Dildo Vibrator with 9 Powerful Vibrations; a Dual Motor Stimulator for Women or Couple Fun (Purple); an FST Silicone Realistic Dildo Gag with Ball; an Adjustable Strap on Mouth Gag for S&M; Vibrating Anal Beads Butt Plug; an Anal Sex Toy Waterproof Bullet Vibrator for Men, Women and Couples; a Sex Toy for Women; an 8.5 Inch Realistic Silicone Dildo; Big Dildos with Strong Suction Cup for Hands-Free Play; Huge Silicone Dildo for Beginners; and Adult Sex Toys for Women. If MV2 stopped talking to the defendant, he threatened to share the sexually explicit images she sent him with her family. (Id., ¶ 20).

    3.    Minor Victim 3 (MV3)

In September 2022, MV3, then 12 years old, met the defendant online. (R. 15, ¶ 21). He bought her items from her Amazon Wishlist to convince her to send him sexually explicit images. (Id). When she initially refused, he threatened to have her social media accounts banned, so she sent him what he requested. When she refused to send him additional explicit images, he threated to commit suicide and to send the explicit images she already sent to her parents. (Id., ¶ 21). He sent her 30 Amazon orders between October 2022 and January 2023. (Id., ¶ 17).

    4.    Minor Victim 4 (MV4)

MV4, then 16 years old, was identified through the subpoena of the defendant's Amazon records but declined to be interviewed about his conduct. The defendant sent

4

MV4 four orders between October and December 2022.

     5.     Minor Victim 5 (MV5)

In November 2022, MV5, then 16, met the defendant online. At first he was nice, but then he became aggressive. (R. 15, ¶ 23). He eventually began demanding that she send him explicit image. "Against her will," she sent him photos and videos that he requested. (Id.). She blocked him but he repeatedly asked her for more images. (Id.). The defendant sent her three Amazon packages between October 30, 2022 to November 7, 2022.

     6.     Minor Victim 6 (MV6)

MV6, then 16, was identified through Amazon records. Law enforcement arranged for her to be forensically interviewed, but her parents later canceled the interview. The defendant sent MV6 22 Amazon packages between October and December 2022. (R. 15, ¶ 17).

     7.     Minor Victim 7 (MV7)

The defendant met MV7, then 16 years old, on Tik Tok. (R. 15, ¶ 24). She eventually blocked him, but he then found her on Snapchat. (Id.). The defendant paid MV7 $10 a day to talk to him and $40 for photos in her underwear. She regularly blocked him because he became sexual. (Id.). He sent her several thousand dollars and two Amazon packages between July and September, 2022. (Id., ¶¶ 17, 24)

III.     Sentencing Argument

The government requests a sentence of 30 years, a sentence at the low end of the guidelines. Notwithstanding the guidelines, this is the appropriate sentence in this

case. Nothing suggests a lower sentence lower is warranted.

> A. The Nature and Circumstances of the Offense and Characteristics of the Defendant

While the defendant pleaded to a single count of receiving child sexual assault material (CSAM), his conduct was not a one-time event. It was not even a multiple-time event with a single victim. This defendant exploited multiple minor girls, one as young as 12-years-old, on multiple occasions. He sent them money. He sent them gifts. And he sent them lingerie to wear and sex toys for the victims to use in images and videos produced by and for the defendant.

Once the defendant had sexually explicit images of his victims, he sent them to other people, further aggravating his conduct, and more importantly, further exploiting his victims. Once images have been shared, they are available to anyone forever.

When the victims would not do what the defendant asked of them, the blackmail, extortion, and threats would begin. He not only threatened to send images to victims' families, but he also threatened to kill himself. Nobody, let alone a minor, should be subject to that kind of manipulation.

The seriousness of the defendant's conduct can also be seen by the impact on the victims. Minor A pleaded with the defendant not to "text anything." MV2's mother reported that MV2 experienced "dark times" when the defendant harassed her. (R. 15, ¶ 39). Looking at the list of items the defendant sent MV2, that is not surprising. It not only affected MV2 schoolwork and personal relationships, but also her mother and father. (Id.). MV3 begged the defendant to stop threatening her and to leave her alone.

In addition to all the conduct described above, the defendant was convicted of

6

possessing child pornography in 2015 and sentenced to three years in prison.  (R. 15, ¶ 112).   That time, agents found videos and images depicting children between the ages of 10 and 13 engaged in sexual activities.  (Id.).

He was released from custody in September, 2020. While on supervision, the defendant denied the need for treatment[4] and showed a continued addiction to pornography and minor females.  (R. 15, ¶ 112).  He violated his supervision by accessing Snapchat and TikTok, the platforms he used to interact with the victims in this case.  By 2022, he was exploiting the victims in this case, knowing they were underage, sending them presents, and coercing them into producing sexually explicit material for his enjoyment.

Rather than being deterred by his prior conviction, his conduct got worse.  The defendant's first conviction involved some adult pornography and images that he seemingly downloaded from the internet.  No longer satisfied by that conduct, he escalated to creating his own CSAM by exploiting and manipulating numerous minors himself.  As MV2's mother stated, the defendant was given the opportunity to prove himself after his first conviction and instead he proved he cannot be trusted in society. (R. 15, ¶ 40).

No question this case has some mitigating facts as well. There is no evidence the defendant sexually assaulted any child or traveled to meet anybody,  However, the aggravating factors – the number of victims, the threats, the manipulation, the scare

---

[4] Following an evaluation in prison, the DOC also found that the defendant did not need treatment.  (R. 15, ¶ 112).

tactics, the dissemination of images he created - far outweigh that mitigation. His actions in having ongoing communication with numerous minors, engaging with these minors in a sexually explicit manor – in some cases directing them how to engage in that conduct, sending them sex toys and lingerie to use in the conduct, then creating videos of these minors engaged in sexually explicit conduct at his direction, and at times sending those images to others, cannot be ignored. His actions warrant a substantial punishment.

      B.      Respect for the Law, Just Punishment, Adequate Deterrence, and Protection of the Public

A 30-year sentence in this case reflects the seriousness of the offense, promotes respect for the law, and provides just punishment. The defendant is subject to a 15-year mandatory minimum in this case due to his prior conviction. While on its face, that might seem a sufficient sentence. However, given the defendant's conduct in this case, anything less than 30 years depreciates the seriousness of this defendant's actions.

A 30-year sentence is also appropriate given the "grave concerns over the high rate of recidivism among convicted sex offenders and their dangerousness as a class." *Smith v. Doe*, 438 U.S. 84, 103 (2003). The fact that the defendant will be subject to restrictions and supervised release when he gets out of prison does not offer any guarantee that he will not offend again. *See United States v. Irey*, 612 F.3d 1160, 1215 (11th Cir. 2010) (discussing studies and other data showing that "supervised release . . . often fails to prevent sex offender recidivism"). In short, "[s]upervised release is better than unsupervised release, but it does not offer society the level of protection from a convicted criminal that incarceration does." *Id.* at 1216. This is particularly true in this

8

case where the defendant began not only reoffending, but actually escalating his exploitive behavior, less than two years after his release from prison for his prior conviction, while on supervised release and restricted from engaging with minors.

The sentence should deter the defendant from engaging in further criminal behavior, deter others from attempting to commit such awful crimes against children, and protect the public by ensuring that the defendant does not have another opportunity to victimize other children. A lengthy sentence will accomplish this goal. Based on the egregious nature of the defendant's criminal misconduct, there is a compelling need to deter future similar conduct by him, as well as other like-minded individuals with an interest in children. There is no reason to believe that anything but a lengthy term in prison will deter him from committing similar offenses in the future.

This defendant, through the crimes documented in this case, has shown himself to be a manipulative, cruel, serial offender with no demonstrated ability or attempts to cease or control his behavior. He repeatedly victimized multiple girls with no sign that he planned to stop before he was caught. To accomplish the goals of sentencing – particularly deterrence and protection of the public – the defendant must be sentenced to a truly significant term of imprisonment.

MV2's mother said it best:

> No other innocent child should have to suffer at the hands of Mr. Sherwood again like my daughter and many others have. Put a stop to this madness judge, we have to start setting examples for predators! We have to send a message that as a society we are not going to allow this kind of behavior. There are people locked up for lesser crimes and get much longer sentences than these child predators. It's wrong! These men are getting a slap on the wrist with just being locked up for a couple of years and released to do it again. Mr. Sherwood proved that to us. Judge I

ask that you do not put the sick individual back into our society to hurt another child. We must take a stand to protect our children. Our schools have a zero policy on bullying, we should have a zero policy on child violence.

(R. 14, ¶ 40).

IV.     CONCLUSION

For all the foregoing reasons, the government respectfully recommends that this Court sentence the defendant to thirty years in prison to be followed by a lengthy term of supervised release. Such a sentence would be sufficient, but not greater than necessary, to reflect the seriousness of the offense and the goals of sentencing.

Dated this 3rd day January.

Respectfully submitted,

TIMOTHY M. O'SHEA
United States Attorney

By:     /s/
ELIZABETH ALTMAN
Assistant United States Attorney